## STATE, ex rel. JIN HON TOM v. TOM.
No. 15445.

Circuit Court, Pinellas County.

November 26, 1963.

C. Ray Smith, St. Petersburg, for petitioner.

Richard T. Earle of Earle & Williams, St. Petersburg, for respondent.

## T. FRANK HOBSON, Jr., Circuit Judge.

This cause came on to be heard before me upon the petition for writ of habeas corpus, writ of habeas corpus, return to the writ of habeas corpus, and the testimony taken before the court on November 15, 1961. Respondent was represented by counsel but, although given notice of said hearing, neither the petitioner nor his attorney appeared.

Petitioner and respondent are husband and wife but have not lived together for some years. Petitioner is a resident of the state of North Carolina. Respondent and the three minor children of the parties have at all times material hereto lived in Pinellas County, Florida.

Petitioner filed his petition for writ of habeas corpus in this state seeking the custody of the minor children of the parties. Respondent filed her return to the writ in substance alleging that it is to the best interests of said children that their custody be confirmed in respondent. However, in her return, respondent also sought an order requiring the petitioner to pay to respondent moneys for the support, care and maintenance of said children while they remain in her custody.

The testimony taken before the court is adequate to sustain, if not require, a finding that it is to the best interests of the children that respondent be granted their care, custody and control, and the court so finds. However, in seeking support money for said children, another question is posed. Incidentally, this question was not raised until the respondent filed her return which was in July, 1963. The question with which this court is now confronted is simply can it in habeas corpus exercise its complete equitable jurisdiction and impose upon the petitioner collateral conditions relative to the support of the minor children. The difficulty of this question is more apparent than real. Although the courts of this state have never passed on it directly, a careful analysis of the problem makes the answer apparent.

Unquestionably, the court has jurisdiction over the res and the parties. Further, the court is under the duty to determine, from evidence, in whose custody said children should be placed for their own best interests and to so place them. Dorman v. Friendly, 146 Fla. 732, 1 So.2d 734. This cause was remanded to this court by the Second District Court of Appeal with directions to take testimony as to the fitness of the respective parents to have custody of the children in the light of their best interests and welfare and to determine said issue and award such custody. Tom v. State, 153 So.2d 334.

It appears from the pleadings and testimony in this cause that, exclusive of economic considerations, the best interests of the children will be served by leaving them in the custody of the respondent. However, the respondent is without means with which to maintain and support said children. The petitioner is financially able to support and care for said children, but inasmuch as he is a resident of the state of North Carolina, unless this court has jurisdiction in this cause to award support money for said children, the respondent cannot secure such support money in this state, and the court has no way of ascertaining whether she can secure such support money in the state of North Carolina. Thus, in the event the court cannot award support money to the wife in this case, it is confronted with a dilemma in determining what is to the best interests and welfare of said children — on the one hand, in granting the custody to the respondent, the court will insure the children loving care in an atmosphere conducive to their welfare but without any economic security whatsoever; on the other hand, if the custody is granted to the petitioner, the court will assure them economic security without any other advantages. When stated in this fashion, it is apparent to the court that if it is to award the custody in the light of the best interests and welfare of the children, it must have jurisdiction not only to award the custody to the respondent but to also make adequate provisions for their support and maintenance. This is particularly true in view of the fact that the petitioner voluntarily came to this state and submitted himself to this court's jurisdiction in order to have this court adjudicate to whom said custody should be granted.

At the outset it is necessary to consider whether habeas corpus as used by contending parties to procure an adjudication as to the custody of minor children is an action at law or in equity. If it is an equitable action, certainly the chancellor has inherent jurisdiction to grant complete relief including an award of support money for the minor children.

In this state there is no statutory authority for the use of habeas corpus except in cases where a person is unlawfully imprisoned or restrained, and the statute, chapter 79, Florida Statutes, is obviously not applicable to litigation involving the custody of minor children. Therefore, the use of the writ of habeas corpus in such cases must depend upon the common law or the inherent power of a court of equity. The nature of habeas corpus, when used as in this case, has been considered by many courts. Mr. Justice Brand, justice of the Supreme Court of Oregon, in one of the leading cases, if not the leading case, on this question, speaking on behalf of the court, said —

"We are not here concerned with the writ when employed to determine the legality of the imprisonment or restraint of a person under the provisions of O.C.L.A., Sections 11-401 to 11-443, but only when employed to determine the custody of minor children. The special proceedings prescribed by that statute are of a legal, as distinguished from an equitable, nature and appeals are taken 'with like effect as in an action.' . . . Under the statutory procedure as applied to criminal cases, the issue is whether the person is illegally imprisoned or restrained. The procedure is summary, the judgment of the court is limited within the traditional scope of habeas corpus ad subjiciendum and is ordinarily limited to the discharge or remand of the prisoner from custody. . . . All of the ancient common law writs, other than the one designated in our statute, are abolished, . . . and the authorities in this and other states clearly establish that the employment of the writ in cases of child custody is not pursuant to, but independent of, statute. *The employment of the forms of habeas corpus in child custody cases rests upon the inherent power of a court of equity exercising the power of the state as parens patriae for the protection of infant wards of the state.*" (Italics added.) Bartlett v. Bartlett, 152 P.2d 402.

This court is of the view that the analysis of the nature of habeas corpus as used in child custody cases set out in Bartlett v. Bartlett, supra, is well considered, sound and should be followed in this state. Again quoting from the opinion of Mr. Justice Brand —

"It ill behooves a modern court of equity to imitate the dry formalism of the early common law courts. As said by Pomeroy, the procedure 'furnished a fixed number of "forms of action." Every remedial right must be enforced through one of these forms; and if the facts of a particular case were such that neither of them was appropriate, the injured party was without any ordinary legal remedy, . . . ' and could have no action. 1 Pomeroy Eq. Jur. 28, 5th Ed. Section 21. It was this very legal conservatism which brought about the development of equitable jurisdiction whereby redress may be derived to accommodate rights instead of the Procrustean technique of cutting off rights which do not fit remedies." Bartlett v. Bartlett, supra.

Because of the foregoing, the court is of the opinion that habeas corpus when used to determine the custody of minor children is an equitable action as distinguished from an action at law. Therefore, although this cause was commenced at law, it should now be transferred to the equity side of the court pursuant to rule 1.39, Florida Rules of Civil Procedure.

It is, thereupon, ordered and adjudged that this cause be and the same is hereby transferred to the equity side of the court and that the clerk shall docket this case on said equity side.

It is further ordered that a hearing be held in this cause on the 5th day of December, 1963, at 9 A. M. before me for the purpose of fixing the support money, if any, which the petitioner shall pay for the maintenance and support of the minor children of the parties.